## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:20-CV-00601-DJH-CHL

**ERICKA PEACOCK JOHNSON,**                                                **Plaintiff,**

**v.**

**EVOLENT HEALTH LLC,**                                                       **Defendant.**

### MEMORANDUM OPINION AND ORDER

Before the Court is a motion to compel further discovery filed by Plaintiff Ericka Peacock Johnson ("Plaintiff"). (DN 32.) Defendant Evolent Health LLC ("Defendant") has filed a response in opposition (DN 33), to which Plaintiff filed a reply (DN 34). Therefore, the motion is ripe for review.

**I.     BACKGROUND**

Plaintiff was employed by Defendant as an analyst from June 2018 until her termination on February 24, 2020. (DN 35-2, at PageID # 184–85, 217.) On August 11, 2020, Plaintiff brought this action in state court alleging pregnancy discrimination and violations of the Family and Medical Leave Act, 29 U.S.C. § 2611, *et seq.*, (DN 1-1), and on August 27, 2020, the case was removed to this Court. (DN 1.) On May 13, 2021, Plaintiff deposed Jennifer Waiters ("Waiters"), a benefits specialist employed by Defendant. (DN 34-4.) During the deposition, Waiters testified that "when someone reaches out about maternity leave, I add them to a tracking spreadsheet." (*Id.*, at PageID # 154.) On May 14, 2021, Plaintiff served her second set of requests for production. (DN 32-1, at PageID # 113–14.) This included request for production 20, seeking "the full tracking spreadsheet of [Defendant's] past and present employees who have requested maternity leave . . . in its original, unredacted form." (DN 32-1, at PageID # 113.) Plaintiff also requested a response

to either request for production 21, for "documentation that establishes when and why each individual's employment with [Defendant] ended," or a response to interrogatory 19 which sought "a verified list stating (a) the date each individual's employment with [Defendant] ended, and (b) whether each individual's employment with [Defendant] ended due to resignation or involuntary termination." (*Id.*, at PageID # 114.) The same day, Defendant noticed its objections to the requests. (DN 33, at PageID # 125; DN 32-2, at PageID # 119.)

On June 15, 2021, Plaintiff sent Defendant a letter responding to the objections. (DN 32-2.) Plaintiff stated that "[t]he requested documents and information will show whether [Defendant] disproportionately terminates employees after learning that they are pregnant." (*Id.*, at PageID # 119.) Plaintiff stated that the requests are "not overbroad as information on other employees who have been pregnant is necessary to recognize and establish patterns, and we believe the pattern exists with [Defendant] as an organization, not just [Plaintiff]'s department or 'location.'" (*Id.*) Plaintiff stated that the requests "are not unduly burdensome as [she] ha[s] provided [Defendant] with the option of either providing [her] responsive information or providing [her] with responsive documents that [she] would take the time to sort through [herself]." (*Id.*) Finally, Plaintiffs stated that the contention that "the requests infring[e] upon the privacy interests of [Defendant's] employees is also disingenuous as [the Parties] have a Confidentiality Agreement in this case." (*Id.*) Plaintiff noted the then-pending settlement conference scheduled for June 28, 2021 and asserted that she would be unable to participate in the settlement conference without responses to her discovery requests. (*Id.*, at PageID # 120.) On June 24, 2021, the Court held a telephonic status conference to discuss the dispute. (DN 30.) During the status conference, Defendant agreed to disclose a redacted version of the maternity leave spreadsheet in order to better situate the Parties to move forward with the settlement conference but would not disclose

additional information. (DN 30, at PageID # 106.) On June 28, 2021, the Court held a settlement conference in this matter; although discussions conducted in good faith, the Parties were unable to come to an agreement. (DN 31, at PageID # 107.) On July 13, 2021, the undersigned conducted an *ex parte* call with Plaintiff during which Plaintiff raised the topic of the discovery dispute as an impediment to settlement. While raised to advance settlement, a legitimate topic for an *ex parte* call, the issue could not be fully addressed or resolved on an *ex parte* basis. Subsequently, Plaintiff filed the instant motion.[1]

## II.   LEGAL STANDARD

This Court maintains discretion over the scope of discovery. *S.S. v. E. Ky Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). Generally speaking, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Discovery responses therefore must be "complete and correct." Fed. R. Civ. P. 26(g)(1)(A). Objections to interrogatories "must be stated with specificity." Fed. R. Civ. P. 33(b)(4). Answers to requests for admission must admit the request, "specifically deny" the request, "detail why the answering party cannot truthfully admit or deny," or object on "stated"

---

[1] Defendant notes that Plaintiff's motion was filed "over a month following the settlement conference, without any additional communication or efforts to discuss the discovery dispute with [Defendant]." (DN 33, at PageID # 126.) Defendant further notes that Plaintiff's motion references the July 13, 2021 discussion between Plaintiff and the undersigned, stating that "[t]his may be referring to an *ex parte* settlement discussion, but [Defendant] did not participate in any such conference on that date and does not have knowledge of what was discussed." (*Id.*, at PageID # 126 n.1.) The Court's June 28, 2021 order is somewhat ambiguous as to whether Plaintiff was granted leave to file the instant motion. (*See* DN 30.) The order states that the Parties "*will be granted leave to proceed to motion practice* but noted that this will not resolve the dispute prior to the settlement conference." (*Id.*, at PageID # 106) (emphasis added). However, given Defendant's agreement to produce redacted versions of the spreadsheet, the Court's order did not set briefing deadlines for any such motion practice. Notwithstanding Plaintiff's delay in filing her motion following the June 23, 2021 status conference and the fact that Defendant was not present during the July 13, 2021 *ex parte* call, the Court finds that the motion was properly filed. Plaintiff satisfied the requirement set forth in the Court's scheduling order to have a status conference before filing a discovery motion. (*See* DN 15, at PageID # 70.) Moreover, Defendant does not argue that further discussions would have resulted in a resolution of the dispute and obviated the need for motion practice. *See* L.R. 37.1.

grounds. Fed. R. Civ. P. 36(a)(4)–(5). Upon a motion to compel discovery, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

## III. DISCUSSION

Below, the Court addresses whether the information sought by Plaintiff's requests is discoverable under Rule 26(b)(1) and then addresses whether Plaintiff's individual requests are appropriate.

### a. Relevance

"Relevant material for the purpose of discovery will encompass any matter that may bear upon, or reasonably could lead to other matters that could bear upon, any issue that is or likely may be raised in the case." *Invesco Institutional, Inc. v. Pass*, 244 F.R.D. 374, 380 (W.D. Ky.2007) (citing *Minch v. City of Chicago*, 213 F.R.D. 526, 527 (N.D. Ill. 2003)). Stated differently, "a request for discovery should be considered to be seeking relevant information if there is any possibility that the information sought may be relevant to the claim or defense of any party in the action." *Id.* at 380 (emphasis in original) (citing *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 F.R.D. 658, 663 (D. Kan. 2003)). Notably, "[t]he federal courts, even after the amendment of rule 26(b) in 2000, have continued to hold that, '[r]elevance for the purpose of rule 26 is broadly construed.'" *Id.* (quoting *Jade Trading, LLC v. United States*, 65 Fed. Cl. 188, 190–191 (2005)) (other citations omitted).

Plaintiff argues that the requested information is relevant to "whether [Defendant] disproportionately terminates employees after learning that they are pregnant." (DN 32, at PageID # 110.) Plaintiff further argues that "[i]f [Defendant] disproportionately terminates its employees when they seek or take maternity and FMLA leave, that motive logically transfers to the former

4

employee who was terminated in this case right after disclosing her pregnancy and requesting maternity and FMLA leave: [Plaintiff]." (*Id.*, at PageID # 111.) In response, Defendant notes that it has already disclosed a redacted version of the maternity leave tracking spreadsheet and the leave status of every employee impacted by the reduction of force that resulted in Plaintiff's termination. (DN 33, at PageID # 127.) Defendant further notes that the disclosed spreadsheet "provides a list of employees who notified the company of a need for maternity and notes which employees were 'terminated.'" (*Id.*) Defendant argues that "Plaintiff fails to explain (because she cannot) why the information already in her possession is insufficient . . . and how the names and personal email addresses of the employees listed on the spreadsheet, as well as additional information regarding any terminated employees, is relevant to her claims." (*Id.*) Defendant further argues that the number of employees terminated while on maternity leave reflected in the redacted spreadsheet disproves Plaintiff's theory that there is a pattern of terminated employees on maternity leave. (*Id.*, at PageID # 127–28.) In reply, Plaintiff notes that metadata for the disclosed spreadsheet shows that it was created the day of Waiters's deposition and last modified on June 24, 2021, the same day it was produced to Plaintiff. (DN 34, at PageID # 134.) Plaintiff asserts that she is entitled to discover the original spreadsheet. (*Id.*, at PageID # 135.) Plaintiff also explains why the additional discovery related to the spreadsheet is necessary, noting that the employee terminations listed on the redacted spreadsheet are from the years 2018-2020. (*Id.*) Plaintiff further notes that among the terminated employees, six were marked with a termination date in 2020, while others from previous years were simply marked "terminated." (*Id.*) Plaintiff argues that "[t]his supports that a different system was used for employees on the spreadsheet for 2020, between 2018-2019, and between 2014-2017, and terminated employees from 2014-2017 are not marked." (*Id.*)

The three claims asserted in Plaintiff's complaint are FMLA retaliation, FMLA interference, and pregnancy discrimination under KRS § 344.040. (DN 1-1, at PageID # 10–12.) Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA] . . . [and] to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(1)-(2). The FMLA provides a right of action to any employee affected by her employer's violation of the FMLA through which the employee is entitled to recover, among other things, "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(I). To establish a *prima facie* case of FMLA retaliation, Plaintiff must show that:

> (1) he was engaged in an activity protected by the FMLA; (2) the employer knew that he was exercising his rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012).

For an interference claim, a plaintiff must establish that:

> (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Killian v. Yorozu Auto. Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir.2005).

The KCRA prohibits an employer from discriminating against an employee "with respect to compensation, terms, conditions, or privileges of employment, because of the individual's ... sex." KRS § 344.040. The term "on the basis of sex" includes pregnancy, childbirth, and related

medical conditions. KRS § 344.030(8). To state a claim for pregnancy discrimination, a plaintiff must establish that "(1) she was pregnant, (2) she was qualified for her job, (3) she was subject to an adverse employment action, and (4) there was a nexus between her pregnancy and the adverse employment action." *Turner v. Sullivan Univ. Sys., Inc.*, 420 F. Supp. 2d 773, 785 (W.D. Ky. 2006) (citing *Prebilich–Holland v. Gaylord Entertainment Co.*, 297 F.3d 438 (6th Cir. 2002) (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000)).

The Court finds that the requested information is relevant for discovery purposes. "It is well-settled that information concerning an employer's general employment practices is relevant" to employment discrimination claims. *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991) (citations omitted) (in the context of Title VII gender discrimination).[2] Plaintiff believes that the requested discovery "will show whether [Defendant] disproportionately terminates employees after learning that they are pregnant." (DN 32, at PAgeID # 110.) Under a theory of disparate impact discrimination, a plaintiff may establish a *prima facie* case of discrimination by showing the existence of an employment practice that disproportionately affects persons in a legally protected group. *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849 (1971). In order to prevail on a disparate impact discrimination claim, the plaintiff must establish a *prima facie* case by first identifying the specific employment practice that is challenged. *Watson v. Fort Worth Bank & Trust Co.*, 487 U.S. 994 (1988). Next, the plaintiff must show an adverse effect caused by the employment practice by offering "statistical evidence of a kind or degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotion because of their membership in a protected group." *Id.* Despite Defendant's argument that only the

---

[2] Courts in the Sixth Circuit analyze FLMA claims within the same framework as Title VII claims. *Donald*, 667 F.3d at 762. Additionally, the KCRA "is similar to Title VII of the 1964 federal Civil Rights Act and should be interpreted consistently with federal law." *Ammerman v. Bd. of Educ., of Nicholas Cnty.*, 30 S.W.3d 793, 897–98 (Ky. 2000).

7

employees noted as "terminated" on the maternity leave spreadsheet—"only 18 out of about 435 employees (about 4%)"—should be counted as relevant to its alleged discriminatory practices, "an employer may not unilaterally determine who is similarly situated to a plaintiff alleging employment discrimination." *Jones v. Johnson*, 801 F. App'x 338, 348 (6th Cir. 2020) (citing *Bobo v. United Parcel Service, Inc.*, 665 F.3d 741, 749 (6th Cir. 2012)).[3] Moreover, Defendant has not provided a sufficient basis for the limitation it proposes. For example, it is unclear whether the eighteen employees listed as "terminated" comprise every employee whose employment was terminated while on maternity leave. Indeed, when asked whether the spreadsheet tracked the date of an employee's termination, i.e., the proximity to the leave and the termination, Waiters testified, "It doesn't." (DN 34-4, at PageID # 156.) It is also unclear whether an employee's termination status is necessarily reflected on the spreadsheet. Waiters testified that "if any employee was terminated, *I would typically* just highlight the row and put in parentheses 'terminated' . . . ." (*Id.*) (emphasis added). Thus, the record does not suggest that there was a uniform system for maintaining the maternity leave spreadsheet. "Defendant[] may argue for the exclusion of certain employees at trial or on a dispositive motion, but Plaintiff must have access to documents before that stage so [s]he can present argument based on h[er] theory of the case." *Albritton v. CVS Caremark Corp.*, No. 5:13-CV-218-TBR-LLK, 2015 WL 4598982, at *2 (W.D. Ky. July 30, 2015), *on reconsideration in part*, No. 5:13-CV-218-TBR-LLK, 2015 WL 6942498 (W.D. Ky. Nov. 10, 2015), *and on reconsideration in part*, No. 5:13-CV-218-TBR-LLK, 2015 WL 7476186 (W.D. Ky. Nov. 23, 2015).

---

[3] "*Bobo* was abrogated on other grounds by *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 360, [ ] (2013) (holding that Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation standard applicable to status-based Title VII discrimination claims set forth in 42 U.S.C. § 2000e-2(m))." *Jones*, 801 F. App'x at 348 n.8.

### b. Proportionality

In assessing whether a discovery request is proportional, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Defendant argues that the requests are overbroad, disproportionate, and overly burdensome.  (DN 33, at PageID # 128–30.)  Defendant asserts that "Plaintiff seeks this Court to compel production of names and personal email addresses of any woman throughout the past seven years who sought to take maternity leave and to further compel [Defendant] to research and report on the reasons for termination of each of the 435 employees on the Maternity Tracking Spreadsheet."  (*Id.*, at PageID # 128.)  Defendant asserts that "Plaintiff does not distinguish between whether the employees worked for [Defendant] in Kentucky or elsewhere, whether they worked in the same department or business unit, whether their termination was voluntary or involuntary, the time elapsed between the leave request and the termination or any other relevant factor."  (*Id.*, at PageID # 129) (footnote omitted).  Defendant cites to several cases from within this circuit in which district courts found expansive third-party document requests to be overbroad and unduly burdensome.  (*Id.*, at PageID # 129–30.)  In reply, Plaintiff disputes that the requests are overbroad or unduly burdensome because she "[ha]s given [Defendant] the option to provide narrow information in the form of an interrogatory answer, or to provide documents for [Plaintiff] to sort through to ease [Defendant]'s burden, [but] [Defendant] does not like either option."  (DN 34, at PageID # 135.)  Plaintiff also attempts to distinguish the basis for its request from those rejected in the cases that Defendants cites.  (*Id.*, at PageID # 136–37.)

The Court is not convinced that responding to Plaintiffs request would impose an undue burden on Defendant. While finding information for 435 employees may seem like a daunting task, Plaintiff seeks only two additional pieces of information related to the individuals listed on the spreadsheet: their termination date and whether their left the company voluntarily or involuntarily. Based on Waiters' testimony, it is not such an onerous endeavor; "it would be a two-step process: You would look at the spreadsheet. Then you bring up the HR file to see what the details of the termination were." (DN 34-4, at PageID # 158.) It is difficult to imagine that accomplishing this task imposes an unreasonable burden or expense on Defendant, especially given Defendant's resources, being "wholly-owned by Evolent Health, Inc., a publicly-traded corporation . . . on the New York Stock Exchange." (DN 3, at PageID # 33.) The Court further finds that the scope of Plaintiff's request is not so broad as to constitute a fishing expedition. Plaintiff does not seek, for example, similar information about every female employee or even every employee that requested FLMA leave. Additionally, Defendant's suggestion that the request should have been narrowed by factors like region or employee position ignores the fact that Defendant itself tracks maternity leave requests by any employee, *regardless of any such factors*, on a single spreadsheet which is maintained by one employee. Moreover, narrowing the scope of the requests will not substantially reduce the burden in responding; Defendant would still have to check every one of the 435 employees on the spreadsheet, determine whether they fit into some narrower category, and for those that do, pull up their human resources profile to find their termination dates. However, the Court agrees with Defendant that the request for unredacted personal identifying information about the employees on the spreadsheet is not proportional to the needs of the case. Plaintiff has not provided any reason why this information is necessary to develop her theory of the case. Therefore, Defendants will be permitted to redact the names and

email addresses of employees included in its responses to the discovery at issue while providing sufficient information for Plaintiff to distinguish between individual employees across documents (*e.g.*, using placeholders such as "Employee 1").

### c. Plaintiff's Requests

#### i. Request for Production 20

Request for production 20 seeks "the full tracking spreadsheet of Evolent past and present employees who have requested maternity leave . . . in its original, unredacted form." (DN 32-1, at PageID # 113.) Plaintiff states that "[g]iven that the redacted spreadsheet was apparently started fresh after Ms. Waiters deposition rather than redacting the existing pregnancy spreadsheet, we do still want the original pregnancy spreadsheet." (DN 34, at PageID # 135.) Rule 34 governs the production of electronically stored information ("ESI") that is otherwise discoverable under Rule 26(b). Under Rule 34, a party may be required "to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . any designated documents or [ESI]--including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations--stored in any medium from which information can be obtained . . . ." Fed. R. Civ. P. 24(a)(1)(A). A request for production of ESI "may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). Plaintiff's request for the original version of the spreadsheet, rather than a version generated *the same day* that Plaintiff served request for production 20, is not unreasonable. Waiters testified that the maternity leave spreadsheet is a single document "saved on a share drive" and that aged content is "not periodically deleted." (DN 34-4, at PageID # 155.) Waiters further testified that she and two of her supervisors has access to the spreadsheet and that she is not aware of whether any additional individuals have access to it. (*Id.*, at PageID # 155–56.) Thus, at the time of the deposition, the

original document existed, but there is a possibility that any person with access could have modified the spreadsheet in the interim. Defendant will be ordered to produce the original spreadsheet and to advise Plaintiff of any deletions or modifications that took place after Waiters's deposition. For the reasons discussed in Part III(b) *supra*, Plaintiff's request for an unredacted version of the spreadsheet will be denied.

### ii. Request for Production 21 and Interrogatory 19

Plaintiff seeks either a response to request for production 21, for "documentation that establishes when and why each individual's employment with Evolent ended," or a response to interrogatory 19 requesting "a verified list stating (a) the date each individual's employment with Evolent ended, and (b) whether each individual's employment with Evolent ended due to resignation or involuntary termination." (DN 32-1, at PageID # 114.) When read together, there is some ambiguity as to what specific information regarding terminations is sought. Interrogatory 19 is narrow and specific, seeking only whether an employee's termination was through "resignation or involuntary termination." On the other hand, request for production 21 broadly asks "why" each employee was terminated, which could be read as requiring Defendant "to research and report on the reasons for termination of each of the 435 employees on the Maternity Leave Spreadsheet." (DN 33, at PageID # 128.) However, Plaintiff's briefs indicate that she seeks to discover the same information through both requests, specifically the narrow information sought by interrogatory 19. (*See* DN 32, at PageID # 111; DN 34, at PageID # 135.) Therefore, to the extent that Defendant opts to respond to request for production 21, Defendant will only be required to disclose documentation that establishes when each employee was terminated and whether each employee was terminated through resignation or involuntary termination.

### IV. ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED as follows:

1. DN 32 is **GRANTED in part and DENIED in part**.

2. On or before **December 20, 2021**, Defendant shall provide responses to request for production 20 and either request for production 21 or interrogatory 19.

Colin H Lindsay, Magistrate Judge
United States District Court

November 22, 2021

cc: Counsel of record

13