UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ERICKA PEACOCK JOHNSON,                                                       Plaintiff,

v.                                                                Civil Action No. 3:20-cv-601-DJH-CHL

EVOLENT HEALTH LLC,                                                          Defendant.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ericka Peacock Johnson alleges that Defendant Evolent Health LLC violated the Family and Medical Leave Act and Kentucky law by terminating her employment. (Docket No. 1-1) Evolent now moves for summary judgment. (D.N. 35) Johnson moves to strike portions of several exhibits attached to Evolent's motion and for leave to file a supplemental response. (D.N. 39; D.N. 55) For the reasons explained below, the Court will grant Evolent's motion, grant in part and deny in part Johnson's motion to strike, and grant Johnson's motion to supplement.

**I.**

Evolent, a company that "helps progressive health systems lead, build, and own the transition from fee-based to value-based healthcare," employed Johnson as a Reimbursement Analyst from June 2018 until her termination on February 24, 2020. (D.N. 35-2, PageID.184–85, 217; D.N. 35-8, PageID.366) Evolent provides services related to payment and reimbursement for healthcare services. (*See* D.N. 1, PageID.8; D.N. 35-8, PageID.366) As an Evolent employee, Johnson was responsible for reviewing reimbursement issues on Evolent's "ticket system." (D.N. 35-2, PageID.189–90; D.N. 40-4, PageID.577) Johnson addressed issues submitted by Evolent's clients by, for example, researching whether a medical provider was still seeing patients at a particular location. (*See* D.N. 35-2, PageID.191)

1

Johnson worked remotely in Kentucky and reported to Senior Manager Clarice Maxwell. (*Id.*, PageID.188) In Johnson's 2018 annual performance review, Maxwell rated her a "2," indicating that Johnson was "developing" on Evolent's five-point performance scale. (*Id.*, PageID.224) Beginning in September 2019, Maxwell scheduled several one-on-one training sessions with Johnson to address her performance issues. (*See id.*, PageID.203–04; D.N. 35-3, PageID.247–48) Nevertheless, Maxwell again rated Johnson a "2" on her 2019 annual review, stating that Johnson "still need[ed] to become more efficient and proficient in the ticket process" and "pay more attention to detail when requesting and analyzing reports." (D.N. 35-2, PageID.226–28) Maxwell noted that she "continuously ha[d] to . . . ask[] questions" when Johnson submitted a completed ticket. (*Id.*) Due to the performance issues outlined in Johnson's 2019 evaluation, Maxwell intended to place her on a performance-improvement plan. (*Id.*, PageID.227; D.N. 40-4, PageID.592–93)

Evolent restructured its reimbursement team in December 2019, and Johnson was offered and accepted a new position as a Configuration Analyst. (D.N. 40-4, PageID.579; *see* D.N. 35-2, PageID.204–05; D.N. 40-5, PageID.632–33; D.N. 44-2, PageID.710) The parties dispute whether Johnson received a pay increase in this new position, although it involved the same job duties as her previous position. (D.N. 35-2, PageID.206; *see* D.N. 40-8, PageID.636) Johnson did not immediately transition to her new position, however. (*See* D.N. 40-7, PageID.635) She continued working as a Reimbursement Analyst under Maxwell's direction but reported to her new supervisor, Marie Lindauer, for "manager issues," such as time-off requests. (D.N. 35-2, PageID.208–12, 230–35)

Evolent began planning a reduction in force (RIF) in February 2020. (D.N. 35-8, PageID.367) On February 7, 2020, Director of Talent Kelly Riley drafted an initial list of

sixty-seven employees, including Johnson, being considered for termination. (D.N. 44-5) All employees on the RIF list had received a 2019 annual evaluation score of "2," except one employee who received a "1." (*See id.*; *see also* D.N. 35-7, PageID.284) The list also noted whether Evolent would be "comfortable with [the] impact" of terminating the employee and contained a column for comments from department leadership. (*See* D.N. 35-8, PageID.367; D.N. 44-5) Some comments supported termination, while others supported retention. (*See, e.g.*, D.N. 44-5, PageID.785) On February 10, Vice President of Talent Management Richard Ventimiglia sent the list to Senior Director of Talent Solutions Melissa Gilliland and Vice President of Talent Patrick Devlin. (*See* D.N. 35-7, PageID.284–85; *see also* D.N. 50-1, PageID.927) The next day, Ventimiglia sent the list to Chief Operating Officer of Health Services Scott Fad. (D.N. 35-7, PageID.326; *see* D.N. 53-2, PageID.1044) Fad updated the list, noting if an employee would need to be backfilled and if so, whether the employee could be backfilled offshore, that is, filled by Evolent employees based in India. (D.N. 35-7, PageID.326; D.N. 53-2, PageID # 1053; *see* D.N. 44-4) Ventimiglia sent this updated list to Gilliland on February 13, 2020. (D.N. 35-8, PageID.367, 375–97)

On February 14, 2020, Johnson requested personal time off for February 20 and March 20. (*See* D.N. 35-2, PageID.235) The same day, Lindauer asked Johnson "how important" it was for her to have those days off, and Johnson explained that she was pregnant with twins and needed to attend medical appointments on both days. (*Id.*; *see* D.N. 35-4, PageID.258–59) Lindauer told Johnson to contact human resources regarding FMLA leave and did not disclose to anyone that Johnson was pregnant. (*See* D.N. 35-4, PageID.258–60) On February 14, 2020, Johnson sent an email to Evolent's human-resources inbox, requesting information about maternity and FMLA leave. (D.N. 35-2, PageID.240–41) Several human-resources employees, including Devlin and

Gilliland, had access to the inbox. (*See* D.N. 53-1, PageID.972) Human Resources Benefits Specialist Jennifer Waiters responded the same day, asking Johnson her estimated due date. (D.N. 35-2, PageID.240–41; *see* D.N. 40-2, PageID.462) Johnson replied that she was due in late July or early August. (D.N. 35-2, PageID.239) On February 18, Waiters emailed Johnson the requested FMLA information and added Johnson's name and due date to Evolent's "Maternity Leave" spreadsheet. (*Id.*, PageID.237–39; D.N. 40-2, PageID.488–89; *see* D.N. 44-3) Only Waiters and two other human-resources employees, Kristine Dubois and Mara Jaffa, had access to this spreadsheet. (D.N. 40-2, PageID.489–90)

On February 21, 2020, Riley created the final list of thirty-three employees, which included Johnson, to be terminated in the RIF. (*See* D.N. 44-6) The same day, Maxwell emailed Johnson an invitation for a telephonic meeting scheduled for February 24, 2020. (D.N. 35-2, PageID.207) On February 24, Maxwell and Talent Solutions Partner Cindy Hargett informed Johnson that Evolent was terminating her because it was eliminating her position. (*Id.*, PageID.218; D.N. 53-1, PageID.1002) Johnson then told Maxwell and Hargett that she was pregnant, which was the first they had heard of her pregnancy. (*See* D.N. 35-2, PageID.219–20; D.N. 35-6, PageID.276; D.N. 40-4, PageID.611–12) Johnson's email access was discontinued immediately after the call. (*See* D.N. 40-12) Evolent ultimately hired several new Configuration Analysts in 2021. (*See* D.N. 35-8, PageID.367; D.N. 40-3, PageID.548–50)

Johnson filed this action in state court in July 2020, and it was removed to this Court on August 27, 2020. (D.N. 1; *see* D.N. 1-1) Johnson claims pregnancy discrimination in violation of Kentucky law, Ky. Rev. Stat. §§ 344.030(8)(a), 344.040(1)(a); and interference and retaliation in violation of the FMLA, 29 U.S.C. § 2601 *et seq*. (D.N. 1-1, PageID.10–12) Evolent now moves

4

for summary judgment. (D.N. 35) Johnson moves to strike certain exhibits attached to Evolent's motion and for leave to file a supplemental response.[1] (D.N. 39; D.N. 55)

## II.

### A. Partial Motion to Strike

Johnson moves to strike portions of three exhibits attached to Evolent's motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(f). (D.N. 39) The Court will construe the motion as a request to redact. *See Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006) ("Exhibits attached to dispositive motions are not 'pleadings,' . . . and are therefore not subject to a motion to strike under Rule 12(f)."). Specifically, Johnson moves to redact the page of her deposition that lists her birthdate. (D.N. 39; *see* D.N. 35-2, PageID.183) Defendants do not oppose redacting this page (*see* D.N. 51, PageID.930), and the Court will accordingly grant Johnson's request as to that exhibit.

Johnson also moves to redact the declaration of Evolent's counsel, Melissa Weiss, and portions of Kelly Riley's declaration. (D.N. 39; *see* D.N. 35-7, PageID.279–82; *see* D.N. 35-9, PageID.399–400) Weiss's declaration discusses when and by whom several of Evolent's documents were "last modified" before Weiss received them. (D.N. 35-9, PageID.399–400) These "last modified" descriptions are different than those listed on the documents turned over to Johnson because, according to Weiss, Weiss's paralegal prepared the documents for production, inadvertently altering the "last modified" descriptions. (*Id.*, PageID.400) In the contested portion

---

[1] Evolent does not oppose Johnson's motion to supplement but requests leave to file a supplemental reply. (D.N. 56) The Court will accordingly grant Johnson's motion. But because the Court will grant summary judgment on all of Johnson's claims, the Court will deny Evolent's request to supplement as moot.

of Riley's declaration, she describes the RIF process and identifies the individuals who participated in the process. (*See* D.N. 35-7, PageID.279–82)

The Court finds that the challenged declarations do not create a genuine issue of material fact. *See Hamilton Cnty. Emergency Commc'ns Dist. v. Level 3 Commc'ns, LLC*, 845 F. App'x 376, 389 (6th Cir. 2021) (finding that denial of motion to strike as moot was proper when the district court granted summary judgment without relying on the contested declaration). Because the Court will not rely on or refer to the challenged portions of these declarations in addressing the motion for summary judgment, it will deny as moot Johnson's motion as to both declarations. *See id.*; *Ceres Protein, LLC v. Thompson Mech. & Design*, No. 3:14-CV-00491-TBR-LLK, 2017 WL 1015855, at *3 (W.D. Ky. Mar. 15, 2017) (citing *Radar Indus., Inc. v. Cleveland Die & Mfg. Co.*, 632 F. Supp. 2d 686, 690 (E.D. Mich. 2009); *Glasser v. Heartland-Univ. of Livonia, MI, LLC*, 632 F. Supp. 2d 659, 673 (E.D. Mich. 2009)) (denying motion to strike as moot when it was "unnecessary to reference" any of the challenged affidavits); *Hampton v. Nat'l Am. Red Cross*, 3 F. Supp. 3d 612, 613 n.1 (W.D. Ky. 2014) (denying motion to strike as moot when the Court did not rely on the challenged documents in resolving the motions for summary judgment).

**B.     Motion for Summary Judgment**

Summary judgment is appropriate when a movant shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). If the nonmovant "fails to properly support an assertion of fact or fails to properly

address another party's assertion of fact," the fact may be treated as undisputed. Fed. R. Civ. P. 56(e)(2)–(3).

### 1. Pregnancy Discrimination

The Kentucky Civil Rights Act prohibits discrimination on the basis of an employee's sex, which includes pregnancy. *See* §§ 344.030(8)(a), 344.040(1)(a). The KCRA is interpreted consistently with Title VII and federal law. *See Spees v. James Marine, Inc.*, 617 F.3d 380, 389 (6th Cir. 2010) (citing *Ammerman v. Bd. of Educ.*, 30 S.W.3d 793, 797–98 (Ky. 2000)). Johnson asserts her pregnancy-discrimination claim based on circumstantial, rather than direct, evidence (*see* D.N. 40, PageID.448), and the claim is therefore analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Kubik v. Cent. Mich. Univ. Bd. of Trs.*, 717 F. App'x 577, 581 (6th Cir. 2017).

To survive summary judgment under the *McDonnell Douglas* test, Johnson must first establish a prima facie case of discrimination by showing that (1) "she was pregnant"; (2) "she was qualified for her job"; (3) "she was subjected to an adverse employment decision"; and (4) "there is a nexus between her pregnancy and the adverse employment decision." *Id.* (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000)) (internal quotation marks omitted). The burden then shifts to Evolent "'to articulate some legitimate, nondiscriminatory reason' for the adverse action asserted." *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981)). If Evolent can do so, the burden shifts back to Johnson to demonstrate that Evolent's proffered reason was pretext for discrimination. *See id.*

#### a. Prima Facie Case

The parties do not dispute that Johnson can satisfy the first three elements of the prima facie case. (*See* D.N. 35-1, PageID.170; D.N. 40, PageID.449) Rather, the dispute centers on

7

whether Johnson can establish a nexus between her pregnancy and termination. (*See* D.N. 35-1, PageID.170; D.N. 40, PageID.449) Evolent does not argue that Johnson must meet the heightened standard set out in *Barnes v. GenCorp*, 896 F.2d 1457 (6th Cir. 1990), which requires an employee who was terminated as part of an RIF and not replaced to present, as part of the fourth prima facie element, "additional direct, circumstantial, or statistical evidence tending to indicate" that she was discharged for "impermissible reasons." *Id.* The Court will therefore presume that this heightened standard is inapplicable. *See E.E.O.C. v. Lucent Techs. Inc.*, 226 F. App'x 587, 591 (6th Cir. 2007).

Nevertheless, to demonstrate the required "nexus" between her pregnancy and termination, Johnson must show that the individuals who made the decision to discharge her "had knowledge of her pregnancy when the decision . . . was made." *Prebilich-Holland v. Gaylord Ent. Co.*, 297 F.3d 438, 443 (6th Cir. 2002). Evolent asserts that the decision to terminate Johnson's employment was made before February 14, 2020, the day she told Lindauer and Waiters that she was pregnant. (D.N. 35-1, PageID.170) But while Johnson's name was included on the initial list of sixty-four employees, created on February 7, a reasonable jury could find that the ultimate decision to terminate Johnson was made on February 20 or 21, when Riley drafted the final list of thirty-three employees and sent that document to Maxwell in anticipation of Maxwell's meeting with Johnson. (*See* D.N. 35-2, PageID.207; D.N. 40-4, PageID.603–04; D.N. 44-6) It is therefore disputed whether any Evolent employee knew that Johnson was pregnant when it decided to discharge her.

Johnson has failed to show, however, that the individuals who actually participated in the RIF process knew about her pregnancy when she was terminated. It is undisputed that Johnson told Lindauer that she was pregnant and that Waiters replied to Johnson's email, which was sent to the human-resources inbox, requesting information about maternity and FMLA leave. (*See*

8

D.N. 35-2, PageID.235, 240–41) Johnson argues that a reasonable jury could find that Devlin, who allegedly influenced the termination decision, also knew she was pregnant because he had access to the human-resources inbox. (*See* D.N. 40, PageID.452) She contends that under the "cat's paw" theory of liability, Devlin's knowledge can be attributed to the other decision makers. (*Id.*) "In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Marshall v. Rawlings Co. LLC*, 854 F.3d 368, 377 (6th Cir. 2017) (quoting *EEOC v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 484 (10th Cir. 2006)) (internal quotation marks omitted). "As a predicate to cat's paw," Johnson must demonstrate that "the record supports discriminatory animus," which "requires a showing of prejudice, spite, or ill will." *Voltz v. Erie Cnty.*, 617 F. App'x 417, 424–25 (6th Cir. 2015) (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011)).

       Johnson's theory fails for several reasons. First, Devlin testified that he did not participate in the RIF process, and Johnson has failed to provide any evidence showing that he participated in or otherwise influenced the termination decision. (D.N. 50-1, PageID.928) Devlin further testified that because he did not actively monitor the human-resources inbox and never saw Johnson's email, he lacked knowledge of her pregnancy. (*Id.*) Johnson has not provided any evidence to the contrary, and she thus cannot show that Devlin knew she was pregnant at the time of her termination. *See Clemente v. Vaslo*, 679 F.3d 482, 495 (6th Cir. 2012) ("'[M]ere speculation, conjecture, or fantasy' [is] insufficient to survive a motion for summary judgment." (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004))). Moreover, Johnson has failed to demonstrate, or even allege, the requisite discriminatory animus to satisfy the cat's-paw theory of liability. *See Voltz*, 617 F. App'x at 424–25. Because Johnson has failed to show that Devlin, or

any individual who participated in the RIF process, knew she was pregnant at the time of her termination, she has not established a prima facie case of pregnancy discrimination. *See Prebilich-Holland*, 297 F.3d at 444 (determining that plaintiff could not establish the prima facie case when she failed to present evidence that the decision makers at her former employer had actual knowledge of her pregnancy).

### b. Legitimate, Nondiscriminatory Reason and Pretext

Even assuming that Johnson could establish a prima facie case of discrimination, however, she has not demonstrated pretext. *See Kubik*, 717 F. App'x at 581. Evolent has provided a legitimate, nondiscriminatory reason for Johnson's termination, namely her inclusion in the RIF due to her negative performance evaluations. *See Barlia v. MWI Veterinary Supply, Inc.*, 721 F. App'x 439, 447 (6th Cir. 2018) (stating that poor performance is a legitimate, nondiscriminatory reason for discharge); *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 539 (6th Cir. 2014) (finding that elimination of a position as part of an RIF was a legitimate, nondiscriminatory reason for termination). Johnson therefore has the burden to establish that Evolent's stated reason for her termination was pretextual. *See Kubik*, 717 F. App'x at 581. Johnson may demonstrate pretext by showing that (1) Evolent's "stated reason had no basis in fact"; (2) "the stated reason did not actually motivate" Evolent; or (3) "the stated reason was insufficient to warrant the adverse employment action." *Bailey v. Oakwood Healthcare, Inc.*, 732 F. App'x 360, 362 (6th Cir. 2018).

It is undisputed that Johnson received a "2" on her evaluation and that all employees who received a "2" on their 2019 evaluations were included on the initial termination list. (D.N. 35-2, PageID.194; D.N. 44-4; D.N. 44-6) Johnson's termination therefore had a basis in fact. *See Pio v. Benteler Auto. Corp.*, No. 21-1231, 2022 WL 351772, at *7 (6th Cir. Feb. 7, 2022) (noting that the termination of an employee with performance issues had a basis in fact, "even if other

10

[retained] employees also had . . . performance issues"); *Giron v. Tyco Elecs. Corp.*, 762 F. App'x 233, 239 (6th Cir. 2019) (finding that an employee's termination for performance issues had a basis in fact when the employee received negative annual reviews).

Johnson has also failed to demonstrate that her poor performance reviews "did not actually motivate" or "w[ere] insufficient to warrant" her termination. *Bailey*, 732 F. App'x at 362. Johnson argues that she establishes pretext by pointing out that there were no comments in the spreadsheet for her, and her position would have to be backfilled with a United States-based employee. (D.N. 40, PageID.453; *see* D.N. 35-8, PageID.367; D.N. 44-4) This, Johnson contends, is evidence that her termination was not warranted, compared to the other employees under consideration, who did receive comments or would not have to be backfilled. (*See* D.N. 40, PageID.453) But at least one other employee who was terminated also had no comments from department leaders and would have to be backfilled with a United States-based employee. (*See* D.N. 44-4, PageID.769; D.N. 44-6, PageID.789) Further, not all comments in the spreadsheet supported termination. (*See* D.N. 44-4) For example, several employees who received comments supporting their retention were ultimately retained, even though Evolent noted that it was "comfortable" with the impact of their termination. (*See, e.g.*, *id.*, PageID.767; D.N. 44-6)

Moreover, while Johnson asserts that her transition to a new position demonstrates that "she had been succeeding" at Evolent, the record shows that Evolent offered her a transfer due to its reorganization and the elimination of her previous position, rather than her "succee[s]" at the company, (D.N. 40, PageID.453; *see* D.N. 35-2, PageID.206; D.N. 40-4, PageID.579). *See Wolf v. Antonio Sofo & Son Importing Co.*, 919 F. Supp. 2d 916, 925 (N.D. Ohio 2012) (finding that plaintiff's reassignment to a new sales territory, which she characterized as a promotion, did not support pretext because she otherwise failed to meet her employer's performance criteria). And

while Johnson argues that she was not on a performance-improvement plan at the time of her termination, differentiating her from other terminated employees, several other employees who were not on such plans were also discharged in the RIF, (D.N. 44-4; D.N. 44-6). *See Giron*, 762 F. App'x at 239. Moreover, Maxwell was considering placing Johnson on a performance-improvement plan in the months immediately preceding her termination. (*See* D.N. 35-2, PageID.203–04, 224–28; D.N. 35-3, PageID.247–48; D.N. 40-4, PageID.592–93) Thus, the only evidence supporting Johnson's claim of pretext is the temporal proximity of her termination to the disclosure of her pregnancy to two employees who did not participate in the RIF process (*see* D.N. 35-2, PageID.235, 240–41), which is insufficient to establish pretext. *See Bailey*, 732 F. App'x at 366 (citing *Megivern v. Glacier Hills Inc.*, 519 F. App'x 385, 398–401 (6th Cir. 2013)).

In her supplemental response, Johnson points to one additional piece of evidence—a spreadsheet indicating that Evolent "involuntarily terminated over a quarter of its employees who . . . disclosed pregnancies and requested FMLA leave." (D.N. 55-1, PageID.1296; *see* D.N. 55-3; D.N. 55-4) For example, she identifies eleven employees who, like Johnson, were involuntarily terminated after disclosing their pregnancies but before they could take FMLA leave. (D.N. 55-1, PageID.1296; *see* D.N. 55-3; D.N. 55-4) This pattern-or-practice evidence, she argues, "combined with other evidence," defeats Evolent's motion for summary judgment. (D.N. 55-1, PageID.1297)

But while pattern-or-practice evidence "may be relevant to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell Douglas* framework," Johnson's claim is not otherwise viable. *Megivern*, 519 F. App'x at 399 (quoting *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004)). The only other evidence Johnson offers is temporal proximity, which alone is insufficient to establish pretext. *See Bailey*, 732 F. App'x at 366.

Accordingly, the proffered statistical evidence fails to establish pretext. *See Megivern*, 519 F. App'x at 399; *see also Williams v. Dearborn Motors 1, LLC*, No. 20-1351, 2021 WL 3854805, at *6 (6th Cir. Aug. 30, 2021) ("[P]laintiffs may present pattern-or-practice evidence to support an employment discrimination claim, but they must still satisfy the *McDonnell Douglas* framework" to defeat summary judgment. (citing *Bacon*, 370 F.3d at 575)). Because Johnson has provided no evidence demonstrating pretext beyond temporal proximity, the Court will grant summary judgment on her discrimination claim. *See Giron*, 762 F. App'x at 239 (finding that plaintiff could not demonstrate pretext where she failed to show discriminatory animus or that similarly situated employees were retained); *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 726 (6th Cir. 2012) (concluding that employee failed to show pretext when he received poor performance reviews and was discharged in an RIF); *cf. Latowski v. Northwoods Nursing Ctr.*, 549 F. App'x 478, 483–86 (6th Cir. 2013) (determining that plaintiff sufficiently demonstrated pretext where employee showed that similarly situated employees were treated more favorably and pointed to statements made by decision makers indicating discriminatory animus towards pregnant women).

    **2.    FMLA Interference and Retaliation**

It is unlawful for employers to either interfere with the rights afforded employees by the FMLA or retaliate against employees for exercising FMLA rights. *See* 29 U.S.C. § 2615(a). Like discrimination claims, FMLA interference and retaliation claims supported by indirect evidence are analyzed under the *McDonnell Douglas* framework. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 761–62 (6th Cir. 2012). To establish a prima facie case of FMLA interference, Johnson must show that

> (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.

13

*Id.* at 761 (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)).

> Johnson must demonstrate a prima facie case of retaliation by showing that
>
> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Id.* (quoting *Killian*, 454 F.3d at 556). For both claims, if Johnson can meet the prima facie case, Evolent has the burden to articulate a legitimate, nondiscriminatory reason for her termination. *Id.* at 762 (citing *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008)). The burden then shifts back to Johnson to "rebut the employer's reason by showing that the proffered reason had no basis in fact, did not motivate the termination, or was insufficient to warrant the termination." *Id.*

Even assuming that Johnson could establish a prima facie case of interference or retaliation, Evolent argues, she cannot sufficiently rebut its proffered reason for her termination. (D.N. 35-1, PageID.174) A reduction in force and performance issues are both legitimate, nondiscriminatory reasons for discharging an employee. *See Parks v. UPS Supply Chain Sols., Inc.,* 607 F. App'x 508, 513–14 (6th Cir. 2015); *Roll v. Bowling Green Metalforming, LLC*, 457 F. App'x 458, 460–61 (6th Cir. 2012); *Eren v. Mars, Inc.*, 27 F. Supp. 3d 855, 863–64 (M.D. Tenn. 2014). Johnson contends that she can demonstrate pretext for the same reasons articulated in her pregnancy-discrimination claim, pointing to temporal proximity, the absence of comments next to her name on the RIF list, and Evolent's belief that it would have to backfill her position. (*See* D.N. 40, PageID.453–54; *see* D.N. 44-4) But as previously discussed, this evidence does not support pretext because at least one other discharged employee, who did not request FMLA leave, had similar notations in the spreadsheet. (*See* D.N. 44-4; D.N. 44-6) And temporal proximity, without more, is insufficient to show pretext. *See Roll*, 457 F. App'x at 461 (citing *Skrjanc v. Great Lakes*

14

*Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001)). Further, while pattern-or-practice evidence may be relevant to proving a retaliation or interference claim brought under the *McDonnell Douglas* framework, the claim must be otherwise viable. *See Megivern*, 519 F. App'x at 399. Pattern-or-practice evidence therefore cannot rescue either of Johnson's FMLA claims. *See id.*

Because Johnson has failed to demonstrate a genuine issue of material fact as to whether Evolent's proffered reason for her termination was pretextual, the Court will grant summary judgment on her FMLA-interference claim. *See Parks*, 607 F. App'x at 518 (affirming grant of summary judgment when plaintiff offered only temporal proximity to show pretext); *Foster v. Roadtec, Inc.*, No. 1:18-CV-270-TAV-CHS, 2021 WL 1910082, at *10–12 (E.D. Tenn. May 12, 2021) (determining that plaintiff failed to establish pretext where he offered no evidence that similarly situated employees excluded from the RIF were treated differently (citing *Partin v. Weltman Weinberg & Reis Co., LPA*, No. 1:14-CV-216, 2016 WL 67299 (S.D. Ohio Jan. 5, 2016), *aff'd*, *Partin v. Weltman Weinberg & Reis Co. LPA*, 666 F. App'x 428 (6th Cir. 2016) ("When positions are eliminated due to budget cuts, a defendant's inclusion of employees who have not taken FMLA leave is evidence that the defendant's selections for elimination were not pretextual."))); *cf. Cutcher v. Kmart Corp.*, 364 F. App'x 183, 189–90 (6th Cir. 2010) (finding summary judgment inappropriate where plaintiff, who was terminated in an RIF, provided evidence that her annual performance evaluation was retroactively lowered soon after she took FMLA leave). For the same reason, the Court will also grant summary judgment on Johnson's FMLA-retaliation claim. *See Tillotson v. Manitowoc Co., Inc.*, 727 F. App'x 164, 168–70 (6th Cir. 2018) (finding summary judgment appropriate where plaintiff, soon after requesting FMLA leave, was discharged in an RIF due to a negative performance evaluation completed before he requested leave); *Partin*, 666 F. App'x at 432 (affirming grant of summary judgment when

plaintiff, while on FMLA leave, was terminated in an RIF due to performance issues); *cf. Cutcher*, 364 F. App'x at 191.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Johnson's partial motion to strike (D.N. 39) is **GRANTED** in part and **DENIED** in part as moot. The Clerk of Court is **DIRECTED** to redact the page of Johnson's deposition that states her birthdate. (D.N. 35-2, PageID.183)

(2) Johnson's motion to file a supplemental response (D.N. 55) is **GRANTED**. The Clerk of Court is **DIRECTED** to file her supplemental response in the record.

(3) Evolent's motion for summary judgment (D.N. 35) is **GRANTED**. A separate judgment will be entered this date.

June 8, 2022

David J. Hale, Judge
United States District Court